# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DWAYNE E. MCCLELLAND, | ) | Bankruptcy No. 19-01695 |
| | ) | |
| Debtor. | ) | |
| ------------------------------------------- | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 20-09010 |
| | ) | |
| DWAYNE E. MCCLELLAND, | ) | |
| | ) | |
| Defendant. | ) | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter came before the Court by telephonic hearing on June 11, 2021. Matthew K. Gillespie appeared for Plaintiff United States of America on behalf of the Social Security Administration ("SSA"). Wilford L. Forker appeared for Debtor-Defendant Dwayne E. McClelland ("Debtor"). The Court heard argument and took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

SSA filed a Complaint to Determine Dischargeability of Debt against Debtor for certain disability insurance benefit ("DIB") overpayments received by Debtor

between 2010 and 2016. (ECF Doc. 1). Currently before the Court is SSA's Motion for Summary Judgment ("Motion"). (ECF Doc. 18). SSA's Motion asserts a right to summary judgment against Debtor under section 523(a)(2)(A) of the Bankruptcy Code—which excepts from discharge any debt obtained by false pretenses, false representations, or actual fraud. 11 U.S.C. § 523(a)(2)(A). SSA seeks summary judgment on the entire amount owed ($63,445.40), or partial summary judgment in the alternative ($27,868.30).

## BACKGROUND

### I.     Regulatory Background

SSA provides Disability Insurance Benefits ("DIB") to "insured" individuals who have contributed to the Social Security trust fund via the Social Security tax on their earnings. 20 C.F.R. § 404.130. DIB is payable to individuals who prove they are "disabled," meaning they are unable to engage in substantial gainful activity ("SGA"), which is an income threshold set by SSA. 20 C.F.R. § 404.1505; see also 20 C.F.R. § 404.1572.

To test their ability to work, DIB beneficiaries may take part in a trial work period ("TWP"). 20 C.F.R. § 404.1592(a). The TWP lasts for a period of nine months. Id. As long as they report their work and continue to have a disability, DIB beneficiaries receive their full DIB during the TWP—regardless of how much they earn. An extended period of eligibility ("EPE") begins the month after the

TWP expires. 20 C.F.R. § 404.1592a(b). The EPE lasts for an additional thirty-six months. Id. Like the TWP, the EPE generally allows beneficiaries to continue working without losing their DIB eligibility. Id. However, the first time a beneficiary's income exceeds the SGA during the EPE, the beneficiary's eligibility for DIB is suspended. 20 C.F.R. § 404.1592a(a)(1).

The SSA will continue to provide DIB during the first month the beneficiary's income exceeds the SGA and for two consecutive months thereafter—regardless of income. 20 C.F.R. § 404.1592a(a)(2). The beneficiary's eligibility for DIB is suspended for the remaining months in the thirty-six-month EPE to the extent the beneficiary's income exceeds the SGA. Id.; 20 C.F.R. §§ 404.316, 404.337, 404.352, 404.401a. Payments made during the period in which a beneficiary's eligibility is suspended are deemed "overpayments," which the beneficiary is obligated to repay. 20 C.F.R. § 404.501(a) (overpayment occurs when the amount of benefits paid to a beneficiary exceeds the amount of benefits the beneficiary was entitled to receive). Upon expiration of the thirty-six-month EPE, if a beneficiary earns wages at or above the SGA for any month thereafter, they become ineligible for DIB going forward. 20 C.F.R. § 404.1592a(a)(3)

Beneficiaries who do not agree with SSA's overpayment assessment may seek administrative appeal within 60 days of receiving notice of the assessment. 20 C.F.R. § 404.909(a)(1). Alternatively, beneficiaries who otherwise agree that

they have been overpaid but feel they should not have to repay it may seek a waiver. 20 C.F.R. § 404.506. A personal conference with a decision maker from SSA is held prior to denial of any initial waiver request. 20 C.F.R. § 404.506(d). Additional avenues for administrative appeal exist for beneficiaries who have had their waiver requests denied—namely reconsideration. 20 C.F.R. § 404.506(i).

## II.    Factual Background

Debtor received DIB from SSA from August 2010 to November 2016—on his own behalf and on behalf of his dependent child. As a condition of eligibility, Debtor was required to report to SSA any wages he earned while receiving DIB. (Compl. Ex. 4).

Debtor began working for Tradesman International, LLC in October 2010, thereby triggering the beginning of the TWP. (Compl. Ex. 9). Between October 2010 and June 2011—the last month of the TWP—Debtor earned wages from Tradesman International, LLC, Loadcraft Industries Ltd., and McCarty Corporation. The TWP expired in June 2011. (Id.). The EPE began July 2011. (Id.).

Between July 2011 and June 2012, Debtor earned wages from A-One Home Health Care LLC and Eagle Systems, Inc. (Compl. Exs. 7 & 9). The wages earned by Eagle Systems exceeded the SGA—which would have triggered a suspension of DIB, had Debtor reported them. (Compl. Ex. 8).

4

SSA was apprised of Debtor's non-disclosure on December 14, 2012 when these earnings appeared on his Social Security record.  SSA asked Debtor to complete a Work Activity Report ("Report") to verify his earnings.  (Compl. Ex. 7).  Debtor completed and returned the Report on December 28, 2012.  (Id.).  Debtor admitted in his Report to working for the above-mentioned entities during the time periods in question, although it was subsequently revealed that he understated his earnings in the Report.  (Id.).  No additional work activities were reported between December 28, 2012, and November 2016.  (Compl. Exs. 16, 17, 18, 19, 20).

SSA claims Debtor earned wages in excess of the SGA from Ice Card, Inc. (d/b/a Barracuda Group) from February 2014 to May 2014, Uni-Form Components Co. from May 2014 to April 2015, and Trinity Industries, Ltd. from May 2015 to July 2015.  (Compl. Exs. 15& 19).  Debtor also earned wages from Pepsi from September 2015 to October 2016.  (Compl. Exs. 20 & 21).  All of these wages were in excess of the SGA.  (Compl. Ex. 8).

The EPE expired in July 2014.  (Compl. Ex. 9).  Those wages earned prior to its expiration—had they been disclosed—would have caused a suspension of Debtor's DIB.  (Compl. Exs. 4 & 9).  Those wages earned after its expiration—had they been disclosed—would have rendered Debtor ineligible for DIB altogether.  (Id.).  Despite this, Debtor continued to receive DIB until November 2016—

approximately $63,445.30, which includes $53,651.40 to Debtor on his own behalf and $9,794.00 to Debtor as representative payee of his minor child.  (Compl. Exs. 13, 22, 23).

Debtor testified that his identity had been stolen during the relevant time. He stated hat he did not work at all at some of the places SSA alleges.  Debtor also has stated that he did not know of the requirements that SSA says he violated. Debtor asserts there was not an adequate explanation.

SSA sent Debtor two notices of overpayment in June 2017—one for the payments made to Debtor on his own behalf, the other for payments made to debtor in his capacity as representative payee.  (Compl. Exs. 22 & 23).  The notices explained that SSA based its assessments on Debtor's work activity and informed him of his rights of appeal or to request a waiver.  (Id.).  Debtor pursued a waiver, but that waiver was denied when Debtor failed to appear at his personal conference.  (Compl. Ex. 24).  No further action was taken by Debtor to dispute the assessment.

## DISCUSSION

### I.    Jurisdiction

Before addressing the merits of SSA's Motion, the Court must resolve a jurisdictional dispute related to SSA's decision to assess Debtor's DIB payments as "overpayments."  Debtor disputes both the amount and bases for SSA's

assessment. SSA asserts that Debtor failed to exhaust his administrative remedies with regard to challenging that assessment, and that this Court is therefore without jurisdiction to review SSA's factual findings. For the reasons that follow, the Court agrees with SSA.

The statutory basis for this Court's jurisdiction is found at 28 U.S.C. § 1334. Section 1334 provides bankruptcy courts (via district court referral) with original jurisdiction over all cases under the Bankruptcy Code and other civil proceedings "arising under," "arising in," or "related to" cases under the Bankruptcy Code. 28 U.S.C. § 1334(a), (b); 28 U.S.C. § 157(a). This broad language confers a substantial degree of jurisdiction over bankruptcy proceedings and related matters. Stern v. Marshall, 564 U.S. 462, 494 (2011); Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995).

However, "[t]he jurisdiction of the bankruptcy courts, like that of other federal courts, is . . . limited by [] statute." Celotex, 514 U.S. at 307. One such limitation exists at 42 U.S.C. § 405(h):

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. **No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as [provided in § 405(g)]**. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under [Title II of the Social Security Act].

7

42 U.S.C. § 405(h) (emphasis added). In other words, § 405(h) provides that claims arising under Title II of the Social Security Act must be adjudicated according to the exclusive method set forth in § 405(g). <u>Shalala v. Ill. Council on Long Term Care, Inc.</u>, 529 U.S. 1, 10 (2000) ("[§ 405(h)] purports to make exclusive the judicial review method set forth in § 405(g)"). Section 405(g) provides, in relevant part:

> Any individual, **after any final decision of the Commissioner of Social Security made after a hearing** to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow . . . .

42 U.S.C. § 405(g) (emphasis added). Thus, a federal court's jurisdiction to review findings of fact or decisions on claims under Title II of the Social Security Act is limited to final decisions made after a hearing. <u>Id</u>. This requires the plaintiff to have run through the SSA's four-step administrative review process, which includes receipt of an initial determination, a request for reconsideration, a hearing before an administrative law judge, and finally an Appeals Council review. 20 C.F.R. § 404.900(a)(1)–(4) (describing the administrative review process).

Debtor has not adequately exhausted the procedures set forth in § 405(g). Debtor has only obtained an initial determination by SSA that the DIB he received were "overpayments" to which he was not entitled. While Debtor requested a waiver of liability for these payments, that waiver was denied when Debtor failed

8

to appear at his personal conference. No further action was taken by the Debtor to pursue reconsideration or a hearing—both of which are prerequisites to any Appeals Council review and final decision. As a result, this Court is without jurisdiction to review the factual bases for SSA's overpayment assessment.

Notwithstanding the foregoing, this Court maintains jurisdiction to determine Social Security matters arising in, arising under, or related to bankruptcy cases. Rodriguez v. United States, 2010 Bankr. LEXIS 955, at *7 (Bankr. N.D. Ga. Mar. 23, 2010). That is—while this Court lacks the jurisdiction to review the factual findings and decision of SSA to assess Debtor's DIB payments as "overpayments," it retains jurisdiction to determine whether the debt owed to SSA is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Having disposed of this preliminary dispute, the Court's discussion turns to SSA's Motion on the matter.

## II. Summary Judgment Standards

Summary Judgment is governed by Federal Rule of Bankruptcy Procedure 7056. Rule 7056 applies Federal Rule of Civil Procedure 56 in adversary proceedings. Fed. R. Bankr. P. 7056. Rule 56 provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. **The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.** The court should state on the record the reasons for granting or denying the motion.

9

Fed. R. Civ. P. 56(a) (emphasis added). "Summary judgment is proper if, after viewing the evidence in the light most favorable to the non-movant, no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law." Johnson v. Carroll, 658 F.3d 819 (8th Cir. 2011) (quoting Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007)).

"The burden of demonstrating that there are no genuine issues of material fact rests on the moving party." Winthrop Res. Corp. v. Eaton Hydraulics Inc., 361 F.3d 465, 468 (8th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue of trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion." In re Maxey, 395 B.R. 665, 670 (Bankr. W.D. Mo. 2008) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A "genuine issue" is not merely some "metaphysical doubt as to the material facts." Id. "Rather, 'a genuine issue exists when the evidence is such that a reasonable fact finder could find for the non-movant.'" Id. (quoting Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994)).

### III.    11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt obtained by "false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A).

10

The plaintiff has the burden of proving by a preponderance of the evidence that its claim falls within the exception to discharge. Grogan v. Garner, 498 U.S. 279, 291 (1991); Treadwell v. Glenstone Lodge, Inc. (In re Treadwell), 637 F.3d 855, 860 (8th Cir. 2011). Establishing an exception to discharge under section 523(a)(2)(A) requires a showing of the following elements:

> (1) the debtor made a **representation**;
> (2) at the time of the representation, the **debtor knew it to be false**;
> (3) the debtor made the representation with the **intent to deceive** the plaintiff;
> (4) the plaintiff **justifiably relied** on the representation; and
> (5) the plaintiff **suffered damage as a proximate result** of the debtor making the representation.

United States v. Pipkin (In re Pipkin), 495 B.R. 878, 880 (Bankr. W.D. Ark. 2013) (citations omitted) (emphasis added); Heide v. Juve (In re Juve), 761 F.3d 847, 851 (8th Cir. 2014). The SSA has the burden of proving all these elements by a preponderance of the evidence.

Debtor's non-disclosure of his work activities was a representation to SSA that Debtor was not working, and that said representation was false. See Fee v. Eccles (In re Eccles), 407 B.R. 338, 342 (B.A.P. 8th Cir. 2009) ("Silence regarding a material fact can constitute a false representation actionable under [section] 523(a)(2)(A)"); In re Hampton, 396 B.R. 28, 30 (Bankr. N.D. Iowa 2008) (same).

Debtor raises an issue of material fact, however, on two key elements of section 523(a)(2)(A). He asserts that he did not know his silence could be a false

11

representation because he did not understand the requirements of reporting. He also alleges that he could not possibly know how much of this alleged work history required disclosure because he did not do any work for these employers. He asserts his identity was stolen and used by someone else to get a job and/or attribute the income to him.

Debtor claims the same fact issues go to the issue of intent. He claims he had no intent to deceive because he was not aware of the reporting requirements. He further claims he had no intent to deceive because he did not work many of the jobs alleged.

There is also a dispute about whether SSA justifiably relied on Debtor's representation. SSA claims it properly relied on the Debtor's silence as a matter of law. See In re Pipkin, 495 B.R. 878, 881 (Bankr. W.D. Ark. 2013) (finding SSA justifiably relies on recipients reporting when employment starts because it is impossible with the existing manpower to monitor each case); In re Drummond, 530 B.R. 707, 710 (Bankr. E.D. Ark. 2015) (same). Debtor asserts SSA was in the best position to make the determination that he had been working and that there was overpayment. Debtor asserts SSA cannot justifiably rely on Debtor's silence when it had all the information about his earnings already.

While it is true that "[b]ankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation

actionable under section 523(a)(2)(A)," Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987), *abrogated in part on other grounds by* Grogan v. Garner, 498 U.S. 279 (1991); see also United States v. Kurtz (In re Kurtz), Ch. 7 Case No. 05-18508-7, Adv. No. 06-5118, 2007 Bankr. LEXIS 2787, at *15 (Bankr. D. Kan. Aug. 17, 2007), Debtor's silence alone does not establish all the elements of section 523(a)(2)(A).

The record before the Court demonstrates that SSA has failed to meet its initial burden proving there are no material factual issues. Thus, summary judgment is denied, and the case will proceed to trial on the issue of dischargeability under section 523(a)(2)(A).

## CONCLUSION

**IT IS HEREBY ORDERED** that SSA's Motion for Summary Judgment is **DENIED**.

Dated and Entered:  October 1, 2021

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE