# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DWAYNE E. MCCLELLAND, | ) | Bankruptcy No. 19-01695 |
| | ) | |
| Debtor. | ) | |
| --- | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 20-09010 |
| | ) | |
| DWAYNE E. MCCLELLAND, | ) | |
| | ) | |
| Defendant. | ) | |

## TRIAL RULING

This dischargeability case came before the Court for trial on June 8, 2022. Matthew K. Gillespie appeared for Plaintiff United States of America on behalf of the Social Security Administration ("SSA"). Wilford L. Forker appeared for Debtor/Defendant Dwayne E. McClelland ("Debtor"). The Court heard argument and took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

SSA seeks a determination that Debtor's debt to SSA for $63,445.30 of disability insurance benefit ("DIB") overpayments is non-dischargeable under 11

U.S.C. § 523(a)(2). (ECF Doc. 1). At trial, SSA presented testimony but Debtor did not testify and did not call any witnesses. Debtor admits to owing a debt to SSA but denies that the debt is non-dischargeable. For the following reasons, the Court concludes only $27,868,30 of the debt is non-dischargeable. The remaining amount of $35,577.10 is dischargeable.

## PROCEDURAL AND FACTUAL HISTORY

### I. Regulatory Background

At trial, Brea Moon-Wirth ("Moon-Wirth"), a claims specialist at SSA, testified about the disability claims process and regulatory requirements. SSA provides Disability Insurance Benefits ("DIB") to "insured" individuals who have paid into the Social Security trust fund through the Social Security tax on their earnings. 20 C.F.R. § 404.130. DIB are payable to individuals who are "disabled," meaning they are unable to engage in substantial gainful activity—an income threshold set by SSA. 20 C.F.R. § 404.1505; see also 20 C.F.R. § 404.1572.

Moon-Wirth detailed two crucial periods of time for DIB beneficiaries—the trial work period and the extended period of eligibility. DIB beneficiaries may take part in a trial work period ("TWP") to test their ability to work. 20 C.F.R. § 404.1592(a). The TWP lasts for nine months. Id. If they report their work and continue to have a disability, DIB beneficiaries receive their full DIB during the

TWP—regardless of how much they earn. An extended period of eligibility ("EPE") begins the month after the TWP ends. 20 C.F.R. § 404.1592a(b). The EPE lasts for thirty-six months. Id. Like the TWP, the EPE allows beneficiaries to continue working without losing their DIB. Id. However, if a beneficiary's income exceeds the SGA during the EPE, the beneficiary's eligibility for DIB is suspended. 20 C.F.R. § 404.1592a(a)(1).

SSA will continue to provide DIB during the first month the beneficiary's income exceeds the substantial gainful activity threshold and for two consecutive months thereafter—regardless of income. 20 C.F.R. § 404.1592a(a)(2). The beneficiary's eligibility for DIB is suspended for the remainder of the thirty-six-month EPE to the extent the beneficiary's income exceeds the limit. Id.; 20 C.F.R. §§ 404.316, 404.337, 404.352, 404.401a.

An "overpayment" occurs when the amount of benefits paid to a beneficiary exceeds the amount of benefits the beneficiary was entitled to receive. Overpayments include payments made during the period in which a beneficiary's eligibility is suspended. Beneficiaries are required to repay overpayments. 20 C.F.R. § 404.501(a). Upon expiration of the thirty-six-month EPE, if a beneficiary earns wages at or above the SGA for any month thereafter, they are no longer eligible for DIB. 20 C.F.R. § 404.1592a(a)(3)

3

Beneficiaries who believe they have wrongly been assessed an overpayment may seek administrative appeal within 60 days of receiving notice of the assessment. 20 C.F.R. § 404.909(a)(1). Alternatively, beneficiaries who otherwise agree that they have been overpaid but feel they should not have to repay it may seek a waiver. 20 C.F.R. § 404.506. A personal conference with a decision maker from SSA is held prior to denial of any initial waiver request. 20 C.F.R. § 404.506(d). Additional avenues for administrative appeal exist for beneficiaries who have had their waiver requests denied—namely reconsideration. 20 C.F.R. § 404.506(i).

## II.    Factual Background

Debtor received DIB from SSA from August 2010 to November 2016—for himself and his dependent child. Debtor was required to report to SSA any wages he earned while receiving DIB to maintain his eligibility. (Compl. Ex. 4).

Debtor triggered the TWP in October 2010 when he began working for Tradesman International, LLC. (Compl. Ex. 9). Between October 2010 and June 2011—when the TWP ended—Debtor earned wages from Tradesman International, LLC, Loadcraft Industries Ltd., and McCarty Corporation. The EPE began the following month, in July 2011. (Id.).

Between July 2011 and June 2012, Debtor earned wages from A-One Home Health Care LLC and Eagle Systems, Inc. (Compl. Exs. 7 & 9). The wages earned

4

by Eagle Systems exceeded the income limit. (Compl. Ex. 8). If Debtor reported his wages, his DIB would have been suspended.

SSA became aware of Debtor's non-disclosure on December 14, 2012, when these earnings appeared on his Social Security record. SSA asked Debtor to complete a Work Activity Report ("Report") to verify his earnings. (Compl. Ex. 7). Debtor completed and returned the Report on December 28, 2012. (Id.). Debtor admitted in his Report to working for the above-mentioned entities during the time periods in question, although it was subsequently revealed that he understated his earnings in the Report. (Id.). Debtor reported no additional work activities between December 28, 2012 and November 2016. (Compl. Exs. 16, 17, 18, 19, 20).

SSA claims Debtor earned wages in excess of the income limit from Ice Card, Inc. (d/b/a Barracuda Group) from February 2014 to May 2014, Uni-Form Components Co. from May 2014 to April 2015, and Trinity Industries, Ltd. from May 2015 to July 2015. (Compl. Exs. 15 & 19). Debtor also earned wages above the limit from Pepsi Bottling Co. from September 2015 to October 2016. (Compl. Exs. 20 & 21).

Debtor's EPE expired in July 2014. (Compl. Ex. 9). Those wages earned before it expired—had they been disclosed—would have caused a suspension of Debtor's DIB. (Compl. Exs. 4 & 9). The wages earned after the EPE expired—

5

had they been disclosed—would have made Debtor ineligible for DIB altogether. (Id.). Despite this, Debtor continued to receive DIB until November 2016. SSA found Debtor had received approximately $63,445.30 of overpayments. This amount includes $53,651.40 to Debtor and $9,794.00 to Debtor as representative payee of his minor child. (Compl. Exs. 13, 22, 23).

Debtor testified in a previous proceeding with SSA that his identity had been stolen during the relevant time. He stated he never worked at some of the places SSA alleges—namely Ice Card, Inc. (d/b/a Barracuda Group), Uni-Form Components Co., and Trinity Industries, Ltd. Debtor also stated that he did not know of the requirements that SSA says he violated. Debtor asserts he never got an adequate explanation of the processes and thus had no idea he exceeded the limit imposed.

SSA sent Debtor two notices of overpayment in June 2017. One was for the payments made to Debtor on his own behalf, and the other was for payments made to Debtor in his capacity as representative payee. (Compl. Exs. 22 & 23). The notices explained that SSA based its assessments on Debtor's work activity and informed him of his right to appeal or to request a waiver. (Id.). Debtor pursued a waiver, but that waiver was denied when Debtor failed to appear for his personal conference with SSA. (Compl. Ex. 24). Debtor did not take any further action to dispute that he owed the $63,445.30 of overpayments.

6

Debtor filed a Chapter 7 Petition on December 3, 2019. (Bankr. No. 19-01695). On March 13, 2020, SSA filed this adversary to determine the dischargeability of overpayment debt owed by Debtor. (ECF Doc. 1). On June 8, 2022, the Court held trial. At the trial the SSA argued that the Debtor incurred a $63,445.40 debt to SSA by false representation, false pretenses, or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A). Debtor argued only a portion of that debt is non-dischargeable based on the facts of his case.

## DISCUSSION

### I.   Jurisdiction

The issue of jurisdiction has already been addressed. See United States v. McClelland (In re McClelland), Ch. 7 Case No. 19-01695, Adv. No. 20-09010, 2021 Bankr. LEXIS 2717, at *7. This Court lacks the authority to review the factual findings of SSA but retains the jurisdiction to determine whether the debt owed by Debtor is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

### II.   11 U.S.C. § 523(a)(2)(A)

SSA argues that Debtor's debt to SSA is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Section 523(a) provides, in part:

> (a)   A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

7

>  (A) **false pretenses**, a false representation, or actual fraud
>  . . .

11 U.S.C. § 523(a) (2022) (emphasis added). SSA asserts that Debtor's debt is non-dischargeable under § 523(a)(2) because it was obtained under false pretenses.

To establish that the debt is non-dischargeable due to false tenses, the plaintiff must establish, by a preponderance of the evidence that its claim falls within the exception to discharge. Grogan v. Garner, 498 U.S. 279, 291 (1991); Treadwell v. Glenstone Lodge, Inc. (In re Treadwell), 637 F.3d 855, 860 (8th Cir. 2011). An exception to discharge under section 523(a)(2)(A) requires the plaintiff to show that "a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage." Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez), 860 F.3d 591, 602 (8th Cir. 2017) (citing Heide v. Juve (In re Juve), 761 F.3d 847, 851 (8th Cir. 2014). SSA has the burden of proving all these elements by a preponderance of the evidence.

False pretense is found "[w]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise." In re Drummond, 530 B.R. 707, 709 (Bankr. E.D. Ark. 2015) (quoting Merchants Nat'l Bank v. Moen (In re

8

Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999)).  The debtor is required to correct what would otherwise be a false impression.  Silence by the debtor in the face of facts he knows are incorrect can constitute a false representation actionable under [section] 523(a)(2)(A).  Fee v. Eccles (In re Eccles), 407 B.R. 338, 342 (B.A.P. 8th Cir. 2009).  Debtor's non-disclosure of his work activities was a representation to SSA, that implied Debtor was not working, and the representation was false.  See In re Hampton, 396 B.R. 28, 30 (Bankr. N.D. Iowa 2008).  Debtor only reported his wages one time during the six years he received DIB—in the December 2012 Report after being asked by SSA.  This implied to SSA that he was not working at other times which was not true.

Moon-Wirth testified DIB beneficiaries receive an explanation of the requirements of reporting wages multiple times.  She also noted that Debtor, like all recipients, was provided with materials detailing the reporting requirements.  Debtor conceded that he knew he had an obligation to report his wages and knew his TWP lasted nine-months.  Debtor alleges, however, that he did not do any work for the employers that SSA says he failed to report—except for Pepsi Bottling Co.  He asserts his identity was stolen and used by someone else to get a job and that income was improperly attributed to him.

Debtor claims he had no intent to deceive because he was not aware of the reporting requirements.  However, Debtor admitted to knowing the reporting

9

requirements.  He further claims he had no intent to deceive because he never worked several of the jobs alleged.  The Court agrees.  Debtor could not have had an intent to deceive based on the wages attributed to him from employers he did not work for.

Debtor also claims there was no justifiable reliance.  SSA claims it properly relied on the Debtor's silence as a matter of law.  See In re Pipkin, 495 B.R. 878, 881 (Bankr. W.D. Ark. 2013) (finding SSA justifiably relies on recipients reporting when employment starts because it is impossible with the existing manpower to monitor each case); In re Drummond, 530 B.R. 707, 710 (Bankr. E.D. Ark. 2015) (same).  Debtor asserts SSA was in the best position to make the determination that he had been working and that there was overpayment.  Debtor asserts SSA cannot justifiably rely on Debtor's silence when it had all the information about his earnings already.  Debtor further asserts SSA's reliance was not justifiable because SSA knew there was a problem with his file and failed to follow up on it for any period between 2013 and 2015.

Although "[b]ankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)," Debtor's silence alone does not establish all the elements required under section 523(a)(2)(A).  Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987), *abrogated in part on other grounds*

10

by Grogan v. Garner, 498 U.S. 279 (1991); see also United States v. Kurtz (In re Kurtz), Ch. 7 Case No. 05-18508-7, Adv. No. 06-5118, 2007 Bankr. LEXIS 2787, at *15 (Bankr. D. Kan. Aug. 17, 2007).  Debtor was not even aware that his identity had been stolen until 2015.  Debtor could not have disputed or reported wages earned when he did not work at any of those places.  SSA has provided some evidence disputing Debtor's claim.  However, SSA has failed to prove by a preponderance of the evidence that Debtor actually worked at those places and that his identity was not stolen.

The Court finds, however, that SSA has met its burden under section 523(a)(2)(A) for DIB disbursed while Debtor worked at Pepsi Bottling Co.  Thus, Debtor received $27,868.30 of overpayments while working there and that debt is non-dischargeable.  Because SSA has failed to sustain its burden of proving overpayments to other employers, it cannot establish the required elements of section 523(a)(2)(A) for those employers—Ice Card, Inc. (d/b/a Barracuda Group), Uni-Form Components Co., and Trinity Industries, Ltd.  The remaining balance of the alleged overpayment, $35,577.10, is dischargeable.

## CONCLUSION

**IT IS HEREBY ORDERED** that part of Debtor's debt is dischargeable. The amount of $27,868.30 is non-dischargeable. The remaining balance is dischargeable.

Dated and Entered: October 21, 2022

/s/ Thad J. Collins
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE